## VALIENTE & CO. v. SUCCESSION OF FUENTES.

### No. 2942.

Circuit Court of Appeals, First Circuit.
Feb. 27, 1935.

George R. Farnum, of Boston, Mass. (Rafael Diaz Cintron, of San Juan, P. R., and Arthur L. Goldman, of Boston, Mass., on the brief), for appellant.

F. de la Torre and J. A. Fernandez Diez, both of San Juan, P. R., for appellee.

Before BINGHAM and WILSON, Circuit Judges, and LETTS, District Judge.

BINGHAM, Circuit Judge.

This is an appeal from a judgment of the Supreme Court of Puerto Rico of July 29, 1933, reversing a judgment of the District Court of San Juan of December 31, 1929, so far as it affected the rights and interests of the defendants Aurelia Fuentes de Rodriguez and Rosalia Fuentes Suarez and as to them ordering judgment in their favor.

The action is a suit at law. It was brought in the District Court for San Juan June 3, 1929, by the plaintiff, Valiente & Co., a juridical entity under the laws of Puerto Rico, against the defendants, Aurelia, Elisa, Maria, Florentino, Aureliana, Carmen, Rosalia, Manuela, and Francisca Fuentes Suarez, and Rosalia Suarez Morales, constituting the succession of Abdon Fuentes Marrero, Rosalia Suarez Morales being the widow of Abdon and the others mentioned their children.

The action was brought to recover the sum due on two promissory notes for $4,000 each, bearing interest at 12 per cent., dated September 30, 1926, payable to Valiente & Co. or order, one on December 30, 1927, and the other on June 30, 1928, signed by Florentino Fuentes, the son, and Abdon Fuentes, the father. The complaint alleges that the amount due on the notes when the suit was brought amounted to $9,120; that the sum of $3,618.61, in addition to the $9,120, was due and owing by Abdon on an account current in which was included the notes and

a debt of Florentino for $1,749.22; that Abdon, in his lifetime, and his wife accepted the details of the account and the balance in favor of the plaintiff; and that the sum of $12,738.61 was liquidated and demandable as an account stated.

All the defendants, except the daughters Aurelia Fuentes de Rodriguez and Rosalia Fuentes Suarez, failed to appear and answer to the complaint and were defaulted. Aurelia and Rosalia appeared and filed answers, in which they denied that Abdon Fuentes owed the plaintiff the sum of $12,738.61 or any other sum; denied that he executed the notes in question; denied that he owed $3,618.61, the balance of the $12,738.61; denied that he assented to the details of the account and the balances which the plaintiff alleged existed in its favor; denied that the sum of $12,738.61 was liquidated and demandable or that it had been acknowledged and accepted by Abdon; and alleged that Abdon was insane; that he was confined in the Insane Asylum of Puerto Rico from about June 4, 1921, to September 21, 1921, when he was discharged at the request of his family; that he was again confined in the asylum from June 13, 1922, to September 9, 1922, when he was discharged at the request of his family; that the mental trouble with which he was afflicted was general progressive paralysis, with which mental disease he continued to suffer to the time of his death; that, on the date of the alleged execution of the notes, Abdon was without capacity to contract; that an item of $1,749.72, included in the $12,738.61, was the personal debt of Florentino Fuentes; that on August 10, 1928, the date this item was charged against Abdon, he was not capable of entering into a contract; and that the supposed account current is the account of Florentino Fuentes and that Florentino received the value of the notes.

In the District Court it was found that Florentino Fuentes signed the notes; that Abdon made his mark; that the notes were delivered to the plaintiff to pay an obligation of Florentino which he had with Roses & Co.; that this debt of his arose out of a contract for planting and cultivating tobacco, which contract Roses & Co. had assigned to the plaintiff, and that neither the principal nor the interest had been paid; that Abdon and his wife, on August 10, 1928, caused a letter to be written to the plaintiff, which they signed with their marks, and in which, after alluding to his sickness and whether he would ever improve, he directed the plaintiff "that you charge this sum [$8,000] to my account; you may charge besides $1,749.72, or a total of $9,747.72." The District Court also found "that, besides acknowledging the debt, this letter acknowledged also the delivery of certain items of merchandise and sums of money in cash, the said account current beginning," as per the account, "in 1925 and ending May 27, 1929"; that on the latter date Abdon, the predecessor of the defendant succession, was owing the sum of $12,738.61; that neither Abdon nor his wife knew how to read or write; that their son Florentino "was the person in charge and practically the administrator of the properties and rights of their predecessor [Abdon]"; that, on the question of the mental capacity of Abdon, three physicians testified, one of whom was the chief of clinical psychiatry of the insular insane asylum; that this witness brought with him two of the records of the asylum showing that Abdon was confined in the insular insane asylum on two occasions during the years 1921 and 1922; that, according to the records, Abdon was suffering from general progressive paralysis; that the third physician testified that he treated Abdon in 1928, and three or four weeks before Abdon died he consulted with another physician; that at that time the patient was mentally deficient, was also suffering from influenza and pneumonia, and that he diagnosed his affliction as an advanced stage of paretic dementia.

In rebuttal the plaintiff offered in evidence a record of the District Court of San Juan in a case brought by Rosalia Suarez, the wife, wherein it was alleged that, on July 27, 1922, Abdon was mentally incapacitated, and that, because of this, Florentino, the son, was appointed guardian of his person and property; that in the same record, but of a later date, there was a petition by Rosalia Suarez, the wife, asking that Abdon be ordered restored and that such an order was entered on April 19, 1923, ending the guardianship; that a doctor testified in behalf of the plaintiff, and said the disease suffered by Abdon was known as general paresis, one characteristic of which was the existence of lucid intervals in the person having the disease; that the defendants then offered evidence in surrebuttal; that one of the physicians who had previously testified in the defendants' behalf, on being recalled, stated that, although lucid intervals might exist, that did not mean that the person was not insane, and besides that a

paretic person suffers from abulia, who follows advice and obeys any one.

In considering the evidence on the question of insanity and the judicial decree offered by the plaintiff in rebuttal, the court said: "We cannot see how the parties now may impeach a judicial decree of this same court of justice [the District Court of San Juan], which adjudged that * * * Abdon Fuentes was perfectly capable of managing his person and properties. If there is a case in which in our opinion paragraph 3 of section 101 [102] of the Law of Evidence is applicable, that is the present one. If the defendant Rosalia Suarez [the wife] by her own act and by producing evidence to that effect obtained the restoration of her predecessor Abdon Fuentes, as well as the removal of the guardianship to which he was subjected, the defendants cannot now, when they derive their rights directly from the same predecessor, deny the unquestionable fact that the plaintiff herein believed in the faith of such judicial restoration and acted in that belief, entering into a contract with Abdon Fuentes, as previously set forth in this opinion." And, after stating that one "not in the full enjoyment of his mental capacity may not enter into contracts, inasmuch as he lacks consent, and consent is one of the essential requisites for the existence of a contract," the court continued: "But in the case at bar it is a court of justice which, under the authority conferred by law, acknowledges the capacity of a man and authorized him to manage his person and his property, and consequently acknowledged full capacity in him to become bound." After stating that there was a discrepancy in the testimony of the physicians, which was not surprising, and intimating that "it might have happened that the physician who appeared in the year 1923 before this court to testify with regard to the mental sanity of the predecessor of the defendants, did so during a prolonged lucid interval of Abdon Fuentes; but * * * by a judicial decree, not impeached up to the present, Abdon Fuentes had capacity to enter into all sorts of contracts and consequently to become legally bound," and found that "the evidence of insanity invoked has been successfully impeached by the plaintiff."

When the case reached the Supreme Court, it reviewed the evidence and found that in September, 1927, Florentino and Abdon signed the two notes, the latter making his mark, his name having been subscribed by a witness; that the letter of August 10, 1928, drafted by an employee of Florentino, bore the marks of Abdon and his wife, both of whom made their marks; that Abdon, at the time, was confined to his bed and died shortly thereafter; that in June, 1921, Abdon was confined in the insular insane asylum; that his case was diagnosed as paretic dementia or general progressive paralysis; that in July, 1922, Abdon was adjudged to be, by reason of insanity, mentally incapable of managing his own affairs, and his son, Florentino, was named as tutor; that in April, 1923, the District Court, which had adjudged him to be mentally incapacitated, found that he had been cured of his insanity and terminated the tutorship; that a physician, who was called in consultation some four weeks before Abdon's death, found him in an advanced stage of paretic dementia; and that the two notes and the debt of something less than $2,000 ($1,749.-72), originally owed by Florentino, had been charged to the account of Abdon pursuant to the letter of August 10, 1928. As to the question of the incapacity of Abdon to contract at the time the notes were executed and the letter of August 10, 1928, was written, the court found that "the testimony as to the facts above outlined and as to the progressive, although sometimes intermittent, character of the disease, fairly established the defense of mental incapacity"; that "the district judge found that the prima facie showing of defendant had been overcome by the judicial order of April 19, 1923, introduced in rebuttal"; but that the District Judge "reached this conclusion upon the theory of an estoppel arising out of subdivision 3 of section 101 [102] of the Law of Evidence"; that Aurelia Fuentes de Rodriguez was not a party to the proceeding in which the order or judgment of April 19, 1923, was made; that there was no evidence that "either the wife or the daughter by any 'declaration, act or omission,' or otherwise, 'intentionally and deliberately,' or otherwise, led plaintiff to believe that Abdon Fuentes was sane at the time he is alleged to have executed the notes and to have written the letter in question"; that there was nothing to show "that plaintiff was induced by any one to rely on the order of April 19, 1923, or that it did rely on the order"; that "there was nothing to show that the plaintiff had any knowledge of the order"; that it may be conceded that the order was conclusive upon the question of insanity at that time (the time it was made); and "that the 'restoration' to sanity evi-

denced by this adjudication must be presumed to have continued 'as long as is usual with things of that nature'" (Law of Evidence, Section 102, subdivision 3); but that Abdon, "who was conclusively shown to have been suffering from progressive paresis some two years or more prior to his judicial 'restoration,' can hardly be presumed to have been sane during a period of five years from the date of that adjudication"; that, "so far as the latter part of that period is concerned, any such presumption would have been destroyed by the evidence"; and "the fact that Fuentes at or near the end of this five-year period was found in an advanced stage of progressive paresis, taken in connection with the nature of that disease and the date of its earlier development, was enough to show that he had not been sane for some time prior to the time of his death"; that "the notes as well as the obligations assumed in the letter were absolutely void"; and that the "other items of the account seem to rest upon no better footing."

Counsel for the plaintiff in their argument and brief seem to have paid little or no attention to the questions stated as errors in their assignments of error, or to the fact that this is an action at law, and the only questions subject to review are questions of law and not of fact.

The first assignment of error reads as follows:

"First. The Supreme Court of Puerto Rico erred in giving an undue application to Section 287, paragraph 2, of the Revised Civil Code of Puerto Rico according to which tutorship ends, with reference to incapacitated persons, by the causes thereof being removed."

Section 287 of the Code provides:

"Sec. 287. Tutorship ends: * * *

"2. With reference to incapacitated persons, those subject to interdiction or prodigals, by the causes thereof being removed."

We are unable to discover that the plaintiff has anywhere argued this assignment of error or that the Supreme Court in its opinion made any ruling as to when tutorship ends that in any way conflicts with the provisions of section 287, or, in fact, any ruling upon the subject. The plaintiff takes nothing by this assignment of error.

The second assignment reads:

"Second. The Supreme Court of Puerto Rico erred in giving an erroneous construction to Section 1230 of the Revised Civil Code of Puerto Rico by extending the inefficacy of the consent given by a person held to be insane to the consent given in a lucid interval by an insane person which has not been so declared by judicial resolution."

Section 1230 of the Civil Code reads:

"Sec. 1230. The following persons cannot give consent:

"1. Minors who are not emancipated.

"2. Lunatics or the insane, and the deaf and dumb who do not know how to write.

"3. Married women, in the cases specified by law."

We are likewise unable to find that this assignment has been argued or in any way relied upon by plaintiff's counsel, and we are also unable to find wherein the Supreme Court in its opinion construed section 1230 or can be said to have directly or indirectly ruled that an insane person during a lucid interval, if he fully understands what he is doing, may not be held to consent thereto. Furthermore, the assignment assumes, contrary to the fact, that the Supreme Court found that Abdon at either of the times here in question had a lucid interval. On the contrary, it found that at the time of the execution of the notes, and later when he placed his mark to the signature upon the letter, he was mentally incapacitated and could not "give his consent."

The third assignment of error states:

"Third. The Supreme Court of Puerto Rico erred in giving an undue application to Section 1219 of the Revised Civil Code of Puerto Rico which acknowledges the presumption of the truth of the res adjudicata and provides that only a judgment obtained in a suit for revision shall be effective against it."

Section 1219 states the cases in which the presumption of the truth of a judgment may and may not be attacked other than by a suit for revision, and in one of its subdivisions states that an adjudication of the civil status of a person shall be valid against third persons, even though they may not have been parties to the litigation. But wherein the Supreme Court wrongfully applied the provisions of this section in its opinion we are unable to see. It did not rule that the judgment or order of April 19, 1923, was not a valid judgment. It expressly stated that "it may be conceded that the order * * * is conclusive upon the

question of sanity at that time." This surely did not contravene the provisions of section 1219.

■ The fourth assignment of error is:

"Fourth. The Supreme Court of Puerto Rico erred in erroneously applying Section 1268 of the Revised Civil Code, in connection with the preceding section, by considering as voidable and not void at law, and subsequently ratifiable, a contract executed by an incapacitated person."

Section 1268 reads:

"Sec. 1268. The action for nullity shall last four years. This term shall commence to run: * * *

"When the purpose of the action is to invalidate contracts * * * executed by minors or incapacitated persons, from the date they were released from guardianship."

Nothing relating to this assignment of error has been argued before us. The Supreme Court made no ruling as to when the time for bringing an action of nullity would begin to run. It did not rule that "a contract executed by an incapacitated person" was voidable and not void and subject to ratification, as this assignment of error states. Its finding and ruling was that the supposed contracts embodied in the notes and letter were nonexistent and void, in which case no action of nullity is required. Gonzalez et al. v. Fumero et al., 38 Porto Rico, 497, 506, 507.

■ The fifth assignment of error is:

"Fifth. The Supreme Court of Puerto Rico erred in unduly applying the principle of substantive law contained in the general legislation of Puerto Rico, according to which no one may impeach his own acts and contracts, voluntarily entered into and spontaneously executed, nor the acts which he directly or indirectly executed or allowed to be executed, while in a position to prevent them."

By this assignment we understand the plaintiff contends that, although Abdon was insane and incapable of contracting at the time he signed the notes and wrote the letter, the defendants are precluded from showing his incapacity at those times to do the acts and make the contracts. But the Supreme Court in Gonzalez et al. v. Fumero et al., 38 Porto Rico, 497, 511, 512, had this question under consideration and there held that "the doctrine that no one can impeach his own acts" does not apply "where the alleged objectionable act lacks binding effect."

■ The sixth assignment of error is:

"Sixth. The Supreme Court of Puerto Rico erred in unduly applying the principle of substantive law of the general legislation of Puerto Rico according to which it is not possible at law to bring an action derived from the invalidity of an act or contract unless judicial declaration of such nullity precedes it."

It is a little difficult to see the application or to know just what is meant by this assignment. The defendants have not brought an action at law on a contract. What they have done is to set up the mental inability of Abdon as invalidating the so-called contracts embodied in the notes and the letter of August 10; and, if plaintiff's counsel regard that as bringing a suit and requiring the defendants before doing so to have procured a judicial declaration of nullity of these contracts, it may be answered that the Supreme Court made no ruling about the matter. It found that Abdon, because of mental incapacity, at the time the notes and letter were executed, was incompetent to do business, and, the element of consent being absent, the supposed contract or contracts were nonexistent and void. Gonzalez et al. v. Fumero et al., supra. In such a case it is not necessary under the civil law of Puerto Rico to procure in advance a judicial declaration of nullity. Gonzalez et al. v. Fumero et al., supra.

The seventh assignment of error is:

"Seventh. The Supreme Court of Puerto Rico erred in not giving efficacy and validity at law to a contract derived from a former one, without previously alleging, discussing or declaring the invalidity of the former contract nor the cause or origin of the subsequent contract incidentally impeached."

What we understand this assignment to mean is that the Supreme Court did not refer to the tobacco contract made between Florentino, the son, and Roses & Co., as to which Abdon was a surety or guarantor. There was no occasion to refer to it. The suit was not brought on that contract. If there was any consideration for the notes upon which the suit was brought, the tobacco contract furnished it. The validity of the tobacco contract was not in question, and there was no need of passing upon its validity.

The eighth assignment is:

"Eighth. The Supreme Court erred in failing to acknowledge probatory value to judicial resolutions."

By this assignment we understand that the plaintiff has reference to the order or judgment of April 19, 1923. We have heretofore pointed out, under the third assignment, what value that adjudication was entitled to and was given it by the Supreme Court, and it needs no further consideration.

The ninth assignment is:

"Ninth. The Supreme Court of Puerto Rico erred in erroneously applying the legal presumption existing in favor of the regularity of judicial proceedings."

This assignment, like the eighth, is covered by the third assignment, and needs no further consideration.

The tenth assignment is:

"Tenth. The Supreme Court of Puerto Rico erred in giving undue weight to the evidence adduced in the trial and in altering the conclusions and holdings of the District Court."

This assignment of error raises no question of law. It seeks to have us weigh the evidence and determine anew the questions of fact involved. This we cannot do.

The eleventh assignment is:

"Eleventh. The Supreme Court of Puerto Rico erred in unduly weighing the facts, without any evidence to justify them, as well as of acts and facts not shown, and in unduly applying presumptions not supported by the evidence produced in the case, against the appellant."

If this assignment seeks to have us review the evidence, weigh it, and redetermine the facts, it stands the same as the tenth assignment. If, however, it seeks to question the facts found by the Supreme Court on the ground that there was no evidence to support them, then a question of law would be raised. But, assuming it to be such, we think there was evidence to support the facts found in the defendants' favor. The mental disease with which Abdon was afflicted was a progressive one, paretic dementia. He unquestionably had it back in 1921 and 1922. He may have had a lucid interval in April, 1923, but, the disease being a progressive one and he having died in an advanced stage of paretic dementia in 1928, it cannot be said that there was no evidence from which the court could have found that he did not possess mental capacity to contract in 1926 and 1928, three and five years after the judgment of capacity was rendered in April, 1923.

In the twelfth assignment of error the plaintiff in substance complains that the Supreme Court, by finding that Abdon was mentally incapacitated in 1926 and 1928, when the notes and letter were signed, and that the alleged contracts were nonexistent and void, contravened the provisions of the Fourteenth Amendment and section 2 of the Organic Act of 1917 (48 USCA § 737), and deprived the plaintiff of its property without due process of law. The mere statement of the proposition is its own refutation.

Certain matters not assigned as error have been argued, which we are not called upon to consider. In one of them it is contended that the Supreme Court was without power and authority to review the evidence and reverse the findings of the District Court, even though in its judgment justice required it; and, although such reversal involved a contrary finding of facts, it was without power to enter judgment on the facts so found. As to this it may be said that a like question was considered in Ana Maria Sugar Co., Inc., v. Quinones (C. C. A. 1918) 251 F. 499, approved in 254 U. S. 245, 41 S. Ct. 110, 65 L. Ed. 246.

Another is that, if one is found at the time of making a contract to be mentally incapable to contract, such mental incapacity or lack of consent is not a defense to a suit upon the contract; that actual consent is not essential in the formation of contracts unless the other party knew of his condition; that the contract is not void, but voidable, and can be avoided only if it is shown to have been oppressive. This is not the law of Puerto Rico as provided in its Civil Code (section 1228) and adjudged by its courts. It may be said, as heretofore pointed out, that under section 1228 of the Civil Code of Puerto Rico no contract exists where consent of the contracting parties is wanting; that such a contract is nonexistent and void, and a decree of nullity under section 1268 is not required, for the reason that that section, when read in connection with section 1267, is called into play only in the case of contracts containing the requisites mentioned in section 1228. Gonzalez et al. v. Fumero et al., 38 Porto Rico 497, and cases there cited.

The judgment of the Supreme Court of Puerto Rico is affirmed.